UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 05-20770-CR-COOKE/BANDSTRA

UNITED STATES OF AMERICA,

       *Plaintiff*,

v.

GLORIA FLOREZ VELEZ,
BENEDICT P. KUEHNE, and
OSCAR SALDARRIAGA OCHOA,

       *Defendants*.

_____/

## ORDER GRANTING DEFENDANT KUEHNE'S MOTION TO DISMISS COUNT ONE

### Introduction

The Government filed its Third Superseding Indictment against Defendants [DE 102] on

May 1, 2008.  In Count One of the Indictment the Government charges that Defendant Kuehne

conspired to engage in monetary transactions in property derived from specified unlawful activity

in violation of 18 U.S.C. §§ 1956(h) and 1957.[1]  Defendant Kuehne, in which his co-defendants

_____

[1](a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

. . . . .

(c)  In a prosecution for an offense under this section, the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity.

(d)  The circumstances referred to in subsection (a) are—

(1)  that the offense under this section takes place in the United States or in the special maritime

join [DE 144, 145], has filed a Motion to Dismiss Count One of the Third Superseding

Indictment [DE 135]. The Defendants contend that Count One must be dismissed because the

conduct alleged is exempt from criminal prosecution.  For the reasons more fully discussed

below, I agree.

## I.  Factual Background

In September 2001, Fabio Ochoa-Vasquez (hereinafter "Ochoa") was extradited to the

United States, Southern District of Florida.[2]  Third Superseding Indictment (hereinafter

"Indictment"),  ¶5.  He was charged with conspiracy to smuggle 30 tons of powder cocaine per

month into the United States between 1997 and 1999.  He hired several defense attorneys, the

"Ochoa criminal defense team" to represent him.

In December 2001 the Ochoa criminal defense team hired Kuehne, a licensed attorney in

the State of Florida, to conduct an investigation into the source of funds to be used by Ochoa to

---

and territorial jurisdiction of the United States....

. . . . .

(f)  As used in this section—

(1)  the term "monetary transaction" means the deposit, withdrawal, transfer or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument (as defined in section 1956(c)(5) of this title) by, through, or to a financial institution (as defined in seciton 1956 of this title), including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title, *but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution.*  18 U.S.C. § 1956.

[2] The Government"s Opposition to Defendants' Motion to Dismiss Count One includes a "factual background." The factual background contains facts that are not alleged in the Third Superseding Indictment. I have considered only the facts alleged in the Indictment in deciding this motion.

pay millions of dollars in legal fees and to verify that they were derived from an untainted source. Indictment, ¶7.  Defendant Oscar Saldrarriaga Ochoa ("Saldarriaga"), is a Colombian attorney, associated with the criminal defense attorneys representing Fabio Ochoa.  Indictment, ¶3. Defendant Gloria Florez Velez ("Velez"), is a certified public accountant in Colombia. Indictment, ¶1.

Between January 2002 and April 2003 fifty-seven (57) wire transfers totaling $5,289,672.67 from various bank accounts within and outside of the United States, were sent to Kuehne's Trust Account.  Indictment,¶8.  Kuehne, with the assistance of Velez and Saldarriaga, drafted six (6) opinion letters advising Ochoa's criminal defense team that he had conducted a comprehensive analysis of the source of all funds.[3]  None of the fifty-seven (57) transfers were rejected.  Indictment, ¶8.  Almost immediately after each of the first four Opinion Letters was completed the Defendants conducted or caused a wire transfer to the Ochoa criminal defense team.  Indictment, ¶9.  Between January 2002 and May 2003, a total of $5,239,653.67 was sent from Kuehne's trust account to the Ochoa criminal defense team.[4]

Subsequently, Kuehne along with Saldariagga and Velez were charged in the Indictment. The Indictment, in Count One alleges that the Defendants conspired and caused financial transactions involving the wire transfer of more than $10,000 in funds to, and within, the United States from Colombia and would forward those proceeds to the Ochoa criminal defense team

---

[3] The Ochoa criminal defense team paid  Kuehne approximately $197,300.00 between April 17, 2002 and February 6, 2004. Indictment, ¶1.

[4] The dates and amounts of the wires are as follows: (1) wire transfer dated 04/05/02 in the amount of $1,670,028.00; (2) wire transfer dated 08/12/02 in the amount of $1,427,159.00; (3) wire transfer dated 02/03/03 in the amount of $865,717.40; and (4) wire transfer dated 05/01/03 in the amount of $1,276,749.27.  Indictment, ¶19.

with false opinion letters certifying that the funds were from a legitimate source.  Indictment, ¶39.  It was the object and purpose of the conspiracy alleged in Count One to engage in monetary transactions through a financial institution with criminally derived property having a value greater than $10,000, for the purpose of paying legal fees to the Ochoa criminal defense team while enriching themselves.

## II.  <u>Motion to Dismiss Standard</u>

A motion to dismiss an indictment targeted at the substance of the offense may be granted only if there is a legal infirmity in the indictment.  *United States v. Belcher*, 927 F.2d 1182, 1185 (11th Cir. 1991); *United States v. Sharpe*,  438 F.3d 1257, 1263 (11th Cir. 2006) ("It is well-settled that 'a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.'") (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir.1987)).  In judging the sufficiency of the Indictment, the Court takes the allegations contained therein as true. *See United States v. Fitapelli*, 786 F.2d 1461, 1463 (11th Cir. 1986).  If the factual allegations of the indictment are sufficient to state the offense charged, the indictment is not deficient and a motion to dismiss must be denied.  *See United States v. Mann,*  517 F.2d 259, 267 (5th Cir. 1975) (binding upon the Eleventh Circuit as set forth in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)). On a pretrial motion to dismiss the court may only decide issues "capable of determination without the trial of the general issue." Fed. R. Crim. P. 12(b). "As the language of the rule indicates, when the issue raised involves a question that may not be determined without 'trial of the general issue' it is not proper for decision by pretrial motion. The 'general issue' has been defined as evidence relevant to the question of guilt or innocence." *United States v. Ferguson,* 142 F.Supp.2d 1350, 1354

(S.D.Fla. 2000) (quoting *United States v. Ayarza-Garcia*, 819  F.2d 1043, 1048 (11th Cir.1987)).

The Court therefore may dismiss the case based only upon a legal infirmity or defect in the

charging instrument; or a purely legal question, such as a determination that the statute is

unconstitutional.

### III.  <u>Monetary Transactions and 18 U.S.C. §1957</u>

### A.

The Defendants argue that they come within the exemption in 18 U.S.C. § 1957(f)(1)

because all the funds[5] transferred to the Kuehne trust account from Colombia were used to pay

the Ochoa defense team and were transactions necessary to preserve a person's right to

representation as guaranteed by the Sixth Amendment of the Constitution. The Government

argues that the exemption is inapplicable.  First, they argue that the transactions described in the

Indictment were not necessary to preserve a person's right to representation as guaranteed by the

Sixth Amendment.  Second, they contend that even if the transactions were exempt, Supreme

Court precedent negates the exemption.  *Caplin & Drysdale, Chartered  v. United States*, 491

U.S. 617 (1989).  Lastly, the Government maintains that the inquiry is factual in nature and

should be treated as a motion for judgment of acquittal.

Section 1957 makes criminal, monetary transactions in criminally derived property

having a value greater than $10,000 by a person knowing that the transaction involves proceeds

of a crime.  Section 1957(f)(1) defines monetary transaction as a "deposit, withdrawal, transfer,

---

[5]As discussed both *supra* and *infra*, Kuehne took in $5,289, 672.67 and transferred to the Ochoa defense team $5,239,653.67.  The Indictment does not explicitly account for the $50,019 discrepancy.  However, for purposes of the Order, the Court assumes the $50,000 not transferred to the Ochoa defense team was kept as Kuehne's contractual retainer fee.  No explanation is apparent for the additional $19.

or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, or through a financial institution.  Included in the same definitional  section is the statutory exemption: ". . . *but such term does not include any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution."* (emphasis added).  The statutory exemption should be read to decriminalize transactions that are legitimately entered into for the legal services of a criminal defense attorney.  *United States v. Ferguson*, 142 F.Supp. 2d 1350 (S.D. Fla., 2000).  "Without the [exemption] a drug dealer's check to his lawyer might have constituted a new federal felony."  *United States v. Rutgard*, 116 F.3d 1270, 1291 (9th Cir. 1997).

Any transaction necessary to preserve the right to representation is not a monetary transaction within the statutory definition of § 1957(f)(1).  "[R]eading § 1957 naturally, the exemption appears to be part of the statutory definition of prohibited 'monetary transaction,' which would support the [exemption] being an element of the money laundering crime."  *Ferguson*, 142 F.Supp. 2d at 1359.[6]

The Indictment alleges in Count One a conspiracy to violate § 1957. The "object and

_____

[6]The Defendant argues that "no one – not the client, not the criminal defense attorney, and not any third party–may be prosecuted under § 1957 for transactions that involve payment for legitimate criminal defense services." Motion to Dismiss Count One of the Superseding Indictment, p. 9. A reasonable reading of the statute could usually limit the scope of the exemption to transactions between a criminal defendant and his or her attorney, or someone acting on their behalf. That is not the factual situation alleged in this Indictment.  Here the Government alleges that the purpose and object of the conspiracy was for the purposes of legal fees, and that Florez Velez and Defendants conducted wire transfers to the Ochoa criminal defense team immediately after each of first four opinion letters.  See Indictment, ¶9.  However, here all of the funds were transmitted to Kuehne's trust account and then directly to the Ochoa criminal defense team, so I need not address that issue.

purpose" of the conspiracy was to "engage in monetary transactions" "for the purpose of paying

legal fees to the criminal defense team."  Indictment, ¶38.  According to the Indictment the

Defendants "conducted or caused a wire transfer to the Ochoa criminal defense team."

Indictment, ¶19.  From January 2002 until April 15, 2003 Kuehne received $5,289,672.67.  *Id.*,

¶8.  Between January 2002 and May 2003 a total of $5,239,653.67 was sent from Kuehne's trust

account to the Ochoa criminal defense team. On the face of the Indictment, the statute exempts

the alleged transactions.

**B.**

The Government argues that the exemption contained in 18 U.S.C. § 1957(f)(1) has been

vitiated.  See *Caplin & Drysdale*, 491 U.S. 617.  The Government contends that the *Caplin &*

*Drysdale* case has unequivocally ruled that a defendant has no Sixth Amendment right to use

illegal narcotics proceeds to pay for attorney's fees. "Thus, no constitutional right guaranteed by

the Sixth Amendment would be implicated by prohibiting Fabio Ochoa from using narcotics

proceeds to pay for his attorney and the statutory exemption is inapplicable herein."

Government's Opposition to Defendants' Motion to Dismiss Count One, at p. 2.

The Government's analysis is flawed. The Supreme Court Decision in *Caplin & Drysdale*

 was limited to whether the Sixth Amendment, in and of itself, prohibited the forfeiture of

criminal proceeds to attorneys.  *Ferguson*, 142 F.Supp.2d at 1357.  As the Supreme Court stated:

> We are called on to determine whether the federal drug forfeiture
> statute includes an exemption for assets that a defendant wishes to
> use to pay an attorney who conducted his defense in the criminal
> case where forfeiture was sought. Because we determine *no such*
> *exemption exists,* we must decide whether the statute, so
> interpreted, is consistent with the the Fifth and Sixth Amendments.
> We hold that it is. 491 U.S. at 619.

Drug proceeds are not excluded from the reach of the federal forfeiture statutes simply because they are used to pay legal fees. *Ferguson*, 142 F.Supp.2d at 1358. The Supreme Court stated that assets paid to criminal defense attorneys are subject to forfeiture. The Court reasoned the Sixth Amendment could not protect assets from forfeiture because they were never rightfully the defendant's to transfer. *Caplin & Drysdale*, 491 U.S. at 626.

Unlike § 1957, the civil forfeiture statute, 18 U.S.C. § 981, does not include an exemption for attorney's fees. Absent such a statutory exemption the Supreme Court reasoned that the Sixth Amendment did not protect such assets from forfeiture. As the court in *Ferguson* explained, the assets underlying such transactions are still subject to forfeiture, since the federal forfeiture statute does not include an exemption similar to 18 U.S.C. § 1957(f). *Ferguson*, 142 F.Supp.2d at 1358.

Congress has explicitly exempted from the money laundering statute transactions "necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution." "Such an [exemption] is needed to prevent the breadth of § 1957 from impinging upon the intimacy of the attorney/client relationship." *Ferguson*, 142 F.Supp.2d at 1358. If I were to construe the statutory exemption as the Government suggests, the exemption for such transactions would amount to no exemption at all. The exemption should be read to exempt from criminal liability transactions that are used for the legal services of a criminal defense attorney. *United States. v. Hoogenboom*,  209 F.3d 665, 669 (7th Cir. 2000). I do not read *Caplin & Drysdale* to eliminate the 1957 exemption.

**C.**

The Government argues that it is improper for me to grant the motion to dismiss at this time.  The Government contends that in order for me to grant the Defendants' motion to dismiss, I would have to make a factual determination that it was necessary for the Ochoa defense team to hire Defendant Kuehne.[7]  I disagree.  A decision on Defendants' motion is proper at this time.

The Government contends that "Defendants' assertion that their conduct was 'necessary' or otherwise protected by the Sixth Amendment, appears to be an 'affirmative' defense to be resolved by the jury at trial," citing *Ferguson*.  However, *Ferguson*, is factually distinguishable.  In *Ferguson* the defendant attorney was alleged to have received funds from a major drug dealer to defend a third party, while the dealer's assets were the subject of a restraining order.  142 F.Supp. 2d at 1352, n.5.  The superseding indictment in *Ferguson* did not allege that the money was transferred to the defendant attorney for payment for his legal services.

The monetary transactions here involve funds transferred to pay legitimate criminal defense services for Ochoa.  According to this Indictment, unlike the indictment in *Ferguson*, all

---

[7] The Government also argues that the payment of criminal defense fees to the Ochoa defense team was not necessary because Jose Quinon had already filed a notice of appearance and under the local rules Quinon could not have withdrawn based upon the non-payment of fees. Government's Opposition to Defendants' Motion to Dismiss Count One, at 16-17. The Government's argument relies on facts outside the facts alleged in the Indictment.  Mr. Quinon's name does not appear in the Indictment.  None of the allegations that the Government asks the court to rely on as to Mr Quinon, Mr. Black and the entry of a "Permanent Notice Of Appearance" are contained in the Indictment.  The Government does attach certain documents to the their Motion in Opposition. I have not considered these facts in deciding this motion, as discussed, *infra*, n. 4. Although I have not used the cited facts in deciding this motion the argument is specious.  It would require me to find that any fee paid after the filing of a notice of appearance could subject someone attempting to provide or secure necessary legal services to criminal liability for money laundering.

the funds wired  to Kuehne's trust account, minus the retainer fee (*see supra* footnote 5), were directly transferred to the Ochoa defense team. The transactions in this case were made with the present intent to exercise Sixth Amendment rights. Count One of the Indictment expressly alleges that the "object and purpose of the conspiracy" was to engage in "monetary transactions" "for the purpose of paying legal fees to the Ochoa criminal defense team."  Indictment, ¶38.[8]

There is also no need for me to make any factual determinations on the propriety of the Ochoa defense team hiring Defendant Kuehne.  As discussed, *supra*, every monetary transfer made to Kuehne, except the retainer fee, was ultimately transferred to the Ochoa defense team. The language of the statutory exemption is simply not as narrow as the Government contends.

### D.

The Defendants' argue that § 1957(f) applies not just to the attorney for a criminal defendant who accepts tainted funds in payment for legal fees.  "Consequently, it means that no one–not the client, not the criminal defense attorney, and not any third party–may be prosecuted under § 1957 for transactions that involve payment for legitimate criminal defense services." Defendant's Motion, at 9.  I do not find the statute exempts everyone who handles tainted funds, to and from defense counsel to provide legitimate criminal defense services.  I need not, however, in deciding this case, decide how far up or far down the chain on the acceptance of allegedly tainted funds the statutory exemption may extend.  However, given the facts, as alleged

---

[8] In the Order on Second Motion for Bill of Particulars I stated "[a]ll Counts were brought in connection with the funds and transfer of funds used to pay Fabio Ochoa's criminal defense team." See Order on Motion for Bill of Particulars.  Moreover, the Government has not alleged that any of the funds were used for purposes other than paying legal fees and costs to Kuehne or the Ochoa defense team.

in this Indictment,  the statutory exemption does apply to both Velez and Saldariagga, as well as Kuehne.

The Indictment states that the Defendants, including Velez and Saldarriaga conducted or caused to be conducted a wire transfer to the Ochoa criminal defense team immediately after each of the first four Opinion Letters.  Indictment, ¶9.  The purpose and object of the conspiracy in Count One was for the purpose of paying legal fees.  Indictment, ¶38. Only fees for legitimate legal services are alleged in Count One. The language in the exemption does not require that the transactions involve only the client and the attorney.  The statute exempts "any transaction."

The dismissal of Count One of the Indictment does not prevent the Government from properly prosecuting attorneys for money laundering related crimes, nor does it totally negate criminal liability for an individual who may conspire to launder tainted funds to pay legal fees. The Government's concern that application of the § 1957 exemption would hinder or bar prosecution of anyone who had contact with tainted funds that were eventually used to pay criminal defense fees is unfounded.  The Indictment, in Counts 2 through 6, also charges Defendants under 18 U.S.C. § 1956 with money laundering concealment conspiracy and concealment money laundering.[9]  There is no exemption contained in § 1956 for transactions

---

[9](a)(1)  Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or

(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or

(B) knowing that the transaction is designed in whole or in part—

necessary to preserve a person's right to representation as guaranteed by the Sixth Amendment to the Constitution.  None of these Defendants have moved to dismiss Counts 2 through 6.  For good reason. Accepting the allegations in the Indictment as true, as required at this juncture, the crimes are appropriately plead and any further determination of the charges should be made on a Rule 29 motion. [10]

---

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activy; or

(ii) to avoid a transaction reporting requirement under State or Federal law.

* * *

(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States--

(A) with the intent to promote the carrying on of specified unlawful activity; or

(B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part--

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law,

[10] In support of their interpretation of 18 U.S.C. § 1957(f) the Defendants request that I look to the legislative history of the exemption. I do not think that the statutory language is ambiguous.  *Barnhart v. Sigmon Coal Co., Inc*.  534 U.S. 438, 461-62, (2002) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete. ") (citations and internal quotation marks omitted). Defendant's Motion to Dismiss, at pp.4-9. As stated in *Ferguson*:

Deducing legislative intent, always a hazardous task, should be resorted to only when the text of the statute is ambiguous or would lead to a patently absurd result,

It is hereby ORDERED that Defendant Kuehne's Motion to Dismiss Count One is GRANTED.  Count One of the Indictment is DISMISSED as to the Defendants Florez Velez, Kuehne and Saldarriaga Ochoa.

DONE and ORDERED in Chambers at Miami, Florida, this 22nd day of December, 2008.

MARCIA G. COOKE
United States District Judge

___

and after the other canons of construction have been exhausted (citations omitted). And even when an inquiry into the legislative intent is necessary, the comments of a particular Senator or Congressman, as opposed to Congressional findings of fact, are of little relevance. In this case, the statutory language is not so ambiguous as to require an inquiry into the legislative intent. 142 F.Supp.2d at 1359.

13